**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Keith Letmon, Appellant.

Appellate Case No. 2012-213672

———————————

Appeal From Spartanburg County
J. Derham Cole, Circuit Court Judge

———————————

Unpublished Opinion No. 2015-UP-117
Heard February 3, 2015 – Filed March 4, 2015

———————————

**AFFIRMED**

———————————

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy
Attorney General John W. McIntosh, and Senior
Assistant Deputy Attorney General Donald J. Zelenka, all
of Columbia; and Solicitor Barry Joe Barnette, of
Spartanburg, for Respondent.

———————————

**PER CURIAM:** Keith Letmon appeals his conviction for murder, arguing the circuit court erred in allowing in-court identifications of Letmon by Anthony

Copeland and Crystal Ross. Letmon contends the photographic array previously shown to the witnesses impermissibly highlighted his photograph and the photographic lineups presented a legally unacceptable likelihood of misidentification under *Neil v. Biggers*, 409 U.S. 188 (1972). We affirm.

"An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification." *State v. Moore*, 343 S.C. 282, 286, 540 S.E.2d 445, 447 (2000). In *Biggers*, the Supreme Court of the United States developed a two-prong inquiry to determine the admissibility of an out-of-court identification. *Moore*, 343 S.C. at 287, 540 S.E.2d at 447. First, a court must determine whether the identification process was unduly suggestive. *Id.* Second, a court must determine whether the identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *Id.* However, only if the procedure was unduly suggestive need the court consider the second question. *Id.* at 287, 540 S.E.2d at 447-48.

Here, the identification process was unduly suggestive, as Investigator Russell Porter administered an initial lineup in which Letmon's photograph and five others were presented together, and Letmon's photograph was highlighted as compared to the other photographs shown to the witnesses. However, we find the identifications of Letmon were nonetheless so reliable that no substantial likelihood of misidentification existed. *See State v. Traylor*, 360 S.C. 74, 82, 600 S.E.2d 523, 527 (2004) ("Even assuming an identification procedure is suggestive, it need not be excluded so long as, under all the circumstances, the identification was reliable notwithstanding the suggestiveness."); *id.* ("The inquiry must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification."); *id.* (noting that "[t]he following factors should be considered in evaluating the totality of the circumstances to determine the likelihood of a misidentification: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation").

Copeland claimed to have known "Slow," whom he identified as Letmon, for six to seven years, and he unequivocally testified Slow was on his porch during the early hours of July 25, 2011, left the porch at one point, and returned later that morning to shoot Cedric Moss. Copeland stated he was within ten feet of Slow when he observed Slow shoot Moss. Copeland explained that he "wasn't that intoxicated" at

the time of the shooting, and Officer Stephen McClure, who transported Copeland to city hall shortly after the shooting, testified Copeland was coherent and seemed to have his faculties about him at that time. Additionally, Investigator Louis Nelson stated Copeland did not appear to be intoxicated at the lineup proceedings, which were administered on the morning of the shooting.

Ross's identification of Letmon as the shooter was similarly reliable. She first encountered Letmon when he came to Copeland's porch on the evening and morning of the shooting, and he caught her attention when he gave Moss an odd look, which prompted Brittany Robinson to ask Moss why Letmon was looking at him in that manner. A few hours after Letmon left Copeland's porch, Ross observed him return to Copeland's duplex in a car, exit the vehicle, walk into Copeland's yard, and shoot Moss. Her identification of Letmon from the photographic lineup on the morning of the shooting was deemed "decisive," and her identification of him at trial was similarly unwavering.

Furthermore, Robinson testified as to the shooting, and while she admitted she had been unable to identify Letmon as the perpetrator during the photographic lineup, she stated at trial she was certain Letmon was the shooter. Jesse Worthy, who had been too intoxicated to participate in questioning on the morning of the shooting, claimed at trial to have known Letmon for over twenty years and expressed that he had been with Letmon at Copeland's duplex on the evening and morning of the shooting. While Worthy admitted he was "so full off the alcohol" that he "passed out for a second or two" around the time of the shooting, he testified he observed Letmon come into Copeland's yard at the time the gunfire started. Robinson's and Worthy's identifications of Letmon were not objected to at trial and therefore are not at issue on appeal. *See State v. Spears*, 393 S.C. 466, 480, 713 S.E.2d 324, 331 (Ct. App. 2011) ("[The appellant] failed to contemporaneously object when [two witnesses] made in-court identifications of the defendants during their direct testimony, despite the fact that both witnesses identified [the appellant] and [his co-defendant] as the gunmen who robbed the Wagon Wheel on several occasions during the course of their testimony. Consequently, any issue with respect to the witnesses' in-court identifications is not properly before this court.").

Accordingly, under the totality of the circumstances, there was not a substantial likelihood of irreparable misidentification. *See Traylor*, 360 S.C. at 82, 600 S.E.2d at 527 ("Even assuming an identification procedure is suggestive, it need not be excluded so long as, under all the circumstances, the identification was reliable notwithstanding the suggestiveness.").

**AFFIRMED.**

**THOMAS, KONDUROS, and GEATHERS, JJ., concur.**